# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RHONDA BENN,<br><br>           Plaintiff,<br>  v.<br><br>METRO-NORTH COMMUTER RAILROAD CO.,<br><br>          Defendant. | 3:18-cv-737 (CSH)<br><br><br>**DECEMBER 2, 2019** |

## RULING ON DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EXPERT EVIDENCE

**HAIGHT, Senior District Judge:**

Plaintiff Rhonda Benn ("Plaintiff") brings this personal injury action against Defendant Metro-North Commuter Railroad Company ("Metro-North" or "Defendant") alleging that she suffered various injuries as a result of riding a Metro-North train, which derailed on May 18, 2017 (the "May 18, 2017 accident") due to Defendant's negligence. *See* Doc. 1-1.  Plaintiff is seeking both economic and non-economic damages including pain and suffering and permanent impairment.  Doc. 35, at 4 ¶ 6.  Metro-North does not contend its liability in this case.  *Id.* at 13 ¶ 9.  However, Metro-North disputes the nature and cause of Plaintiff's alleged injuries.  *Id.* at 5 ¶ 6.  The instant ruling resolves Defendant's pending motion in limine as well as Plaintiff's request to reopen discovery raised in the parties' Joint Trial Memorandum and Plaintiff's objection to Defendant's motion.

# I. BACKGROUND

Pursuant to the Court's scheduling order, the following deadlines were set for this matter: Plaintiff was required to "designate all trial experts and provide expert reports on or before January 31, 2019"; depositions of Plaintiff's expert witnesses were to be completed on or before April 1, 2019; and all discovery was to be completed by May 31, 2019. *See* Doc. 16. The case was set to be trial-ready on December 2, 2019. *See* Doc. 37.

On September 30, 2019, the parties filed a Joint Trial Memorandum reflecting the parties' disagreement over whether the case should proceed to trial in December 2019 or whether expert discovery should be reopened. *See* Doc. 35, at 1–2 ¶ 5. Plaintiff requests to extend expert discovery "until the end of 2019" and schedule the trial for April 2020 because Plaintiff is seeking "further medical care" for left upper extremity radiculopathy[1] and paresthesia[2]—a medical issue for which Plaintiff has sought treatment since the May 18, 2017 accident and which, Plaintiff alleges, has reoccurred. *See id.* at 1 ¶ 5; Doc. 38, at 2–3, 5. Defendant opposes extending discovery deadlines in this matter "nearly six months after the [expert disclosure] deadline" and contends that Plaintiff's "left upper extremity radiculopathy . . . to date, has not been causally linked to the [May 18, 2017] accident." Doc. 35, at 2 ¶ 5.

Simultaneously with the filing of the Joint Trial Memorandum, pursuant to Federal Rules of Civil Procedure 37(c), 26(a)(2), 26(e) and this Court's scheduling order, Defendant moved in

---

[1] Radiculopathy describes "a range of symptoms produced by the pinching of a nerve root in the spinal column," such as "pain, weakness, numbness and tingling." "The pinched nerve can occur at different areas along the spine (cervical, thoracic or lumbar)." *See Radiculopathy*, JOHN HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy (last visited Nov. 23, 2019).

[2] Paresthesia refers to "a burning or prickling sensation," usually described as "tingling or numbness," that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body." "Chronic paresthesia is often a symptom of an underlying neurological disease or traumatic nerve damage." *See Paresthesia Information Page*, NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE, https://www.ninds.nih.gov/Disorders/All-Disorders/Paresthesia-Information-Page (last visited Nov. 23, 2019).

limine to preclude at trial the February 26 and February 27, 2019 opinions by Plaintiff's treating neurosurgeon Dr. Abraham Mintz, M.D. that were created and disclosed after the expert disclosure deadline of January 31, 2019 (the "February 2019 opinions"). *See* Doc. 35-1, at 1, 3 n.3. Dr. Mintz has treated Plaintiff since December 1, 2017 when she was first referred to him in connection with "intense neck pain" and "paresthesias" affecting both upper extremities, "left [being] worse than right." *See* Pl.'s Exh. 13, at 1. Dr. Mintz's initial December 1, 2017 assessment documented that Plaintiff reported being "in good health" until May 2017 "when riding a train that derailed." *Id.* To address Plaintiff's condition, which Dr. Mintz diagnosed as "cervical disk herniation," (*id.* at 2), Dr. Mintz performed surgery on Plaintiff on February 12, 2018. *See* Pl.'s Exh. 12, at 9. The February 2019 opinions that Defendant seeks to preclude detail Plaintiff's progress since the February 12, 2018 surgery. Dr. Mintz's February 26, 2019 opinion notes that Plaintiff "feels that her condition improved, but she didn't return to her baseline prior to the accident." *See* Pl.'s Exh. 13. Dr. Mintz's February 27, 2019 opinion, contained in a letter to Plaintiff's counsel, states that Plaintiff's "permanent partial disability rating of her cervical spine secondary to the injury of May [1]8, 2017 is 30%." *See* Pl.'s Exh. 13; Doc. 38, at 3.

Defendant argues that the February 2019 opinions should be precluded as untimely because they were produced to Defendant only in August 2019—about six months after the January 31, 2019 expert disclosure deadline and three months after all discovery closed on May 31, 2019. *See* Doc. 35-1, at 2, 3 n.3. Defendant also argues that the February 2019 opinions, assessing Plaintiff's permanent cervical spine disability and linking it to the May 18, 2017 accident, do not comply with Federal Rule of Civil Procedure 26(a)(2)(B) because these opinions go "beyond what is contained in [Dr. Mintz's] treatment records" and, thus, should have been

disclosed as part of a report "setting forth . . . the basis for [these] opinions." *See id.* at 5–6. Defendant does not object to Dr. Mintz's other opinions or medical records that were disclosed prior to the close of expert discovery.[3]

On October 7, 2019, Plaintiff filed an objection to Defendant's motion to preclude. Doc. 38. In her objection, Plaintiff contends that the February 2019 opinions should not be precluded as untimely because Defendant's prior counsel was informed that, pursuant to the A.M.A. Guidelines to the Evaluation of Permanent Impairment, Plaintiff could only receive a permanent disability rating of her cervical spine "one year post surgery"—that is, not until February 2019, after the close of the expert disclosure period. *See id.* at 3–4. Plaintiff contends that Defendant "did not object" to such late disclosure. *See id.* at 4.

Plaintiff does not deny that Defendant received the February 2019 opinions only in August 2019. However, Plaintiff's counsel represents that he believed that the February 2019 opinions were shared with Defendant in March 2019 pursuant to counsel's directions to a paralegal who was shortly fired for behavior and performance issues. *See id.* After realizing that "there was other work [the paralegal] reported having done that was not performed," the office of Plaintiff's counsel apparently sent (or re-sent) the February 2019 opinions to Defendant on August 6, 2019. *See id.* Given the faulty performance of the paralegal, I will take it as established that Defendant's counsel did not receive Dr. Minitz's February 2019 opinions until August 6, 2019.

Additionally, Plaintiff in her objection requests that discovery and trial deadlines be extended to allow Plaintiff to conduct additional discovery into her left upper extremity paresthesia symptoms, which, Plaintiff alleges, are caused by the May 18, 2017 accident. *See id.*

---

[3] It is not contested that Dr. Mintz was timely disclosed as one of Plaintiff's experts on January 31, 2019. (Doc. 35-1, Exh. A, at 2, 19).

at 5.  Plaintiff requests the Court to modify the scheduling order in the following way: extend the expert disclosure to December 31, 2019, extend all discovery until March 1, 2020, and try the case in April 2020.  *Id.*  Plaintiff offers to make both herself and Dr. Mintz available for depositions "to address matters not previously addressed."  *Id.*

Although Defendant opposes extending discovery deadlines, "in the event this Court is inclined to re-open discovery to allow the plaintiff to cure her error," Defendant requests "an opportunity to re-depose the plaintiff regarding her later treatment and current limitations, and to conduct any necessary depositions of the plaintiff's medical providers."  Doc. 35-1, at 7.

## II.  DISCUSSION

### A.  Defendant's Motion to Preclude the February 2019 opinions

The Court begins by considering Defendant's motion to preclude the February 2019 opinions pursuant to Rule 37(c).  Defendant argues that preclusion should be granted because: (1) the February 2019 opinions are untimely under this Court's scheduling order and Federal Rules of Civil Procedure 26(e) and 26(a); and (2) the February 2019 opinions do not comply with the expert disclosure requirements of Federal Rule of Civil Procedure 26(a)(2)(B).

Pursuant to Rule 37(c)(1), a party who fails to provide the information in compliance with Rules 26(a) and 26(e) is generally not allowed to use that information at trial "unless the failure was substantially justified or is harmless."  *See* Fed. R. Civ. P. 37(c)(1).  Ultimately, however, it is within the district court's discretion whether to preclude the improperly disclosed information or "impose other appropriate sanctions" instead, such as "payment of the reasonable expenses."  *See id.*; *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006) (concluding that "the plain text" of Rule 37 suggests that the preclusion sanction is not "automatic" and that the trial court may impose other sanctions instead); *Ritchie Risk–Linked Strategies Trading (Ir.),*

*Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (noting that, under Rule 37(c), the court has discretion to impose "less severe sanctions" than preclusion). Indeed, preclusion is "a drastic remedy" that is "generally disfavored." *Kunstler v. City of New York*, 242 F.R.D. 261, 265 (S.D.N.Y. 2007).

The Court will now consider whether Plaintiff failed to comply with Rules 26(a) and (e) and, if so, what sanction is appropriate for such noncompliance under Rule 37(c).

**(1) Whether the February 2019 Opinions Were Timely under Rules 26(a) and 26(e)**

Under Rule 26, a party must make its expert disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Further, a party "must supplement or correct" such disclosures "in a timely manner" upon learning that they are "in some material respect . . . incomplete." Fed. R. Civ. P. 26(e)(1)(A). Thus, Rule 26 imposes "a continuing obligation" on a party to timely make and supplement its expert disclosures. *See Advanced Analytics, Inc. v. Citigroup Glob. Mkts, Inc.*, 301 F.R.D. 31, 35 (S.D.N.Y. 2014) (citing Fed. R. Civ. P. 26(e)(1)(A)).

It cannot be contested that Plaintiff's disclosure of the February 2019 reports was untimely under Rules 26(a) and 26(e) and this Court's scheduling order. Because Plaintiff was required to "designate all trial experts and provide expert reports on or before January 31, 2019," the February 2019 opinions were essentially untimely upon their creation. Further, the February 2019 opinions were not disclosed to Defendant until August 2019—six months after the expert disclosure deadline and five months after Plaintiff learned of these opinions. Thus, Plaintiff violated both Rule 26(a)(2)(D) and Rule 26(e)(1)(A) by failing to abide by the Court's deadlines and supplement her expert disclosures "in a timely manner" upon learning that they were incomplete and did not represent all of Dr. Mintz's opinions.

**(2) Whether the February 2019 Opinions Comply with Rule 26(a)(2) Expert**

     **Disclosure Requirements**

Rule 26(a)(2)(B) provides that any expert disclosure must be "accompanied by a written report," containing:

> "(i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Despite these requirements, treating physicians "who are not specially retained for the purposes of trial are not required to provide an FRCP 26(a)(2)(B) report," even though they are considered experts.[4] *See Romanelli v. Long Island R. Co.*, 898 F. Supp. 2d 626, 630–31 (S.D.N.Y. 2012) (collecting cases); *Barack v. Am. Honda Motor Co.*, 293 F.R.D. 106, 109 (D. Conn. 2013) (collecting cases); *see also* Rule 26 Advisory Comm. Note ("A treating physician . . . can be deposed or called to testify at trial without any requirement for a written report.").  Thus, "without the obligation to submit an expert report" treating physicians "may testify as to

---

[4] The courts in this circuit agree that treating physicians are properly categorized as experts even when they are not required to prepare a Rule 26(a)(2)(B) report.  *See e.g.*, *Lamere v. New York State Office for the Aging*, 223 F.R.D 85, 88–89 (N.D.N.Y. 2004) (classifying a treating physician "as one of [the] types of experts recognized under Fed. R. Civ. P. 26(a)(2) and Fed. R. Evid. 702" even when they are not required to prepare a written report); *Romanelli*, 898 F. Supp. 2d at 630 (noting that "The Federal Rules of Civil Procedure ("FRCP") and the FRE now categorize treating physicians as expert rather than lay witnesses").

opinions formed during their treatment, including causation, severity, disability, permanency and future impairments." *Barack*, 293 F.R.D. at 109; *Morritt v. Styker Corp.*, 973 F. Supp. 2d 177, 182 (E.D.N.Y. 2013); *Williams v. Regus Mgmt. Grp., LLC*, No. 10 Civ. 8987, 2012 WL 1711378, at *3 (S.D.N.Y. May 11, 2012) (same); *accord Lamere*, 223 F.R.D at 89–90 (N.D.N.Y. 2004) (collecting cases holding that treating physicians can testify to "a host of opinions" formed during the course of treatment). In contrast, a treating physician "should not be permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records" without submitting a Rule 26(a)(2)(B) report. *Barack*, 293 F.R.D. at 109; *see Lamere*, 223 F.R.D at 89–90.[5]

Even when a treating physician properly proceeds without a Rule 26(a)(2)(B) report, he nonetheless must produce and disclose "the subject matter on which [he] is expected to present evidence" and "a summary of the facts and opinions to which [he] is expected to testify." *See* Fed. R. Civ. P. 26(a)(2)(C); *Barack*, 293 F.R.D. at 109; *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, No. 11-cv-0445, 2013 WL 4046263, at *3 (E.D.N.Y. Aug. 8, 2013) ("Rule 26(a)(2)(C) applies to expert witnesses not covered by Rule 26(a)(2)(B)"). As explained in the Advisory Committee Notes to the 2010 Amendment, which added Rule 26(a)(2)(C) to the Federal Rules of Civil Procedure:

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include *physicians or other health care professionals* and employees of a party who do not regularly provide expert testimony. Parties must

---

[5] Courts reach different conclusions as to what information a treating physician may consider in forming his opinions without submitting a Rule 26(a)(2)(B) report. *Compare Barack* (noting that a treating physician who is called upon to review "[any] materials outside the four corners of [his] medical records" is required to submit a Rule 26(a)(2)(B) expert report), *with Geary v. Fancy*, 2016 WL 1252768, at *3 (W.D.N.Y. Mar. 31, 2016) (concluding that the plaintiff's treating physician did not have to prepare a Rule 26(a)(2)(B) report to opine on the findings of the defendant's medical expert because Fed. R. Evid. 703 allowed the physician to testify "based on a variety of information other than [his] personal knowledge such as 'reports and opinions of nurses, technicians and other doctors.'").

identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C) (emphasis added).

The Advisory Committee Notes to the 2010 Amendment also explain that the "summary disclosure" required by Rule 26(a)(2)(C) "is considerably less extensive than the report required by Rule 26(a)(2)(B)":

> Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions. This disclosure is *considerably less extensive* than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have (emphasis added).

While the requirements for summary disclosures by treating physicians are thus more lenient, the summary disclosures must provide "sufficient detail to permit defendants to prepare their defense." *See McAfee v. Naqvi*, No. 3:14-cv-410, 2017 WL 3184171, at *5 (D. Conn. July 26, 2017); *Chevron Corp. v. Donziger*, No. 11-cv-0691, 2013 WL 5493996, at *2 (S.D.N.Y. Oct. 3, 2013). For example, in *McAfee*, the court held that the plaintiff's disclosure of his treating physicians' testimony was deficient under Rule 26(a)(2)(C) because it failed to provide sufficient detail explaining "what any of these treating physicians [would] offer specifically on the subject matter for which they were disclosed, in terms of facts and medical opinions." *McAfee*, 2017 WL 3184171, at *5. "Instead of facts and opinions," the plaintiff's disclosure "offer[ed] mere generalities, such as the fact that [the plaintiff] was denied medical attention and sustained permanent disabilities as a result," thus failing to provide the level of detail necessary to allow the defendants to prepare their defense. *Id.* at *6 (internal quotation marks omitted).

In the present case, it appears that Dr. Mintz, who has treated Ms. Benn since December 2017, may testify as to causation, disability, permanency and future impairment opinions that he formed during the course of Ms. Benn's treatment, without preparing a Rule 26(a)(2)(B) report. *See id.* at *5; *Morritt*, 973 F. Supp. 2d at 182; *Williams*, 2012 WL 1711378, at *3. Defendant's

conclusory assertion that Dr. Mintz's causation and permanent disability opinions go "beyond what is contained in [Dr. Mintz's] treatment records" is not supported by the record. Doc. 35-1, at 5–6. Plaintiff was referred to Dr. Mintz to seek treatment for the injuries that she alleges arose out of the May 18, 2017 accident. *See* Doc. 38, at 2–3; Pl.'s Exh. 13, at 1. In fact, Dr. Mintz's initial December 1, 2017 assessment documented that Plaintiff reported being "in good health" until May 2017 "when riding a train that derailed," and that, following the accident, she started experiencing "intense neck pain radiating into both upper extremities" and "intermittent paresthesias over the 1st, 2nd and 3rd and sometimes 4th digit of both hands, left [being] worse than right." *Id.* at 1. To address these symptoms, which Dr. Mintz diagnosed as "cervical disk herniation," Dr. Mintz performed surgery on Plaintiff on February 12, 2018. *See* Pl.'s Exh. 12, at 9. It is, thus, appropriate for Dr. Mintz to opine on whether the injuries for which he treated Plaintiff are casually related to the May 18, 2017 accident. *See Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995) (concluding that the plaintiff's treating physicians did not need to prepare a written expert report to testify "whether the injuries for which they treated the plaintiff [could] be causally related to the accident," because such opinion would be "within the scope of the patient's care and treatment").

Similar reasoning applies to Dr. Mintz's ability to provide opinions as to disability of Plaintiff's cervical spine without preparing a Rule 26(a)(2)(B) report. Dr. Mintz, who performed surgery on Plaintiff in connection with her cervical disk herniation, may provide an opinion as to permanent disability of Plaintiff's cervical spine that he formed during her treatment. *See id.*; *Zanowic v. Ashcroft*, No. 97-cv-5292, 2002 WL 373229, at *3 (S.D.N.Y. Mar. 8, 2002) ("a treating physician . . . can express an opinion as to "the cause of any medical condition presented

in a patient, the diagnosis, the prognosis and the extent of the disability, if any, caused by the injury").

However, to testify as to such opinions at trial, Dr. Mintz must still provide a summary disclosure that complies with Rule 26(a)(2)(C) and provides sufficient detail to allow Defendant to prepare its defense. While the February 2019 opinions outline the subject matter of Dr. Mintz's opinion, they fail to describe "with sufficient detail" the "facts and opinions" to which he will testify. *See McAfee*, 2017 WL 3184171, at *4. For example, Dr. Mintz's February 27, 2019 opinion states in a conclusory fashion that "Ms. Benn's permanent partial disability rating of her cervical spine secondary to the injury of May [1]8, 2017 is 30%"—however, Dr. Mintz entirely fails to explain which facts, such as medical records, or opinions, such as observations formed during the course of treatment, support his conclusions. Pl.'s Exh. 13. Similarly, Dr. Mintz's February 26, 2019 opinion does not detail why Plaintiff "didn't return to her baseline prior to the accident." *Id.* Thus, the February 2019 records do not comply with the disclosure requirements of Rule 26(a)(2)(C)—nor does Plaintiff argue otherwise.[6]

### (3) Whether the February 2019 Opinions Should be Precluded Under Rule 37(c)(1)

Because the February 2019 opinions have failed to comply with Rules 26(a) and 26(e), Plaintiff would generally not be allowed to use these opinions at trial "unless the failure was substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1).

Here, Plaintiff has not "substantially justified" her failure to timely disclose the February 2019 opinions. Plaintiff contends that the February 2019 opinions containing Plaintiff's permanent disability assessment could not have been shared with Defendant prior to the expert disclosure deadline (i.e. January 31, 2019) because, per the AMA Guidelines, Plaintiff could

---

[6] Notably, Plaintiff does not in any way discuss or address Defendant's argument that the February 2019 opinions do not meet Rule 26(a)(2) requirements. *See* Doc. 38.

only receive her permanent disability rating "one year post surgery"—that is, not until February 2019.[7]  Doc. 38, at 3–4.  Plaintiff states that this information "was shared with the prior defense counsel, Attorney Tom Lambert who did not object to the permanency rating expert disclosure post January 31, 2019." *Id.* at 4.  This account does not "substantially justif[y]" Plaintiff's failure to comply with the Court's scheduling order.  Plaintiff's counsel, who was on notice that Dr. Mintz would not provide a permanent disability opinion by January 31, 2019, should have timely sought an extension of the expert disclosure deadline instead of informing Defendant's counsel of Plaintiff's intention to disregard it.

Further, although Plaintiff contends that, but for the faithless paralegal, the February 2019 records should have been produced to Defendant in March 2019, I think it apparent that Defendant did not actually receive these records until August 2019—about five months after they were first created and shared with Plaintiff and six months after the close of the expert disclosure period.  Doc. 38, at 4; Doc. 35-1, at 3 n.3.  Plaintiff explains the failure of the March 2019 production in the following manner (Doc. 38, at 4):

> Plaintiff's counsel was of the understanding that his directions to send [the February 2019 records] to defense counsel were performed by a particular paralegal. Plaintiff's counsel cannot confirm that it was done since the paralegal directed to do it was fired shortly after that time for threatening other employees. The office has discovered that there was other work she reported having done that was not performed. Not having confirmation said discovery compliance went out in August 6, 2019.

This account demonstrates a lack of diligence on the part of Plaintiff's counsel and cannot "substantially justif[y]" Plaintiff's failure to supplement Dr. Mintz's disclosures "in a timely manner."  Plaintiff's counsel's attempt to blame the tardy production of the February 2019 opinions on a paralegal cannot excuse his failure to supervise the discovery process and assure compliance with the deadlines set in this matter.  A lawyer is responsible for supervising

---

[7] Defendant does not in any way contest Plaintiff's assertion that Ms. Benn could receive her permanent disability rating only one year after her surgery.

the work that he delegates to paralegals or other non-lawyers and remains responsible for their work. *See Monroe v. Horwitch*, 820 F. Supp. 682, 687 (D. Conn. 1993); *see also In re Sobolevsky*, 430 Fed. Appx. 9, 18 (2d Cir. 2011) (noting that the attorney "was responsible for the actions of non-lawyers acting at his direction, and for his failure to responsibly supervise them"). Plaintiff's counsel thus remained responsible for ensuring that the supplemental disclosures were produced to Defendant in a timely manner. Additionally, Plaintiff has made no attempts to explain why the February 2019 opinions do not comply with Rule 26(a)(2) requirements.

Plaintiff's failure to comply with proper expert disclosures is not "harmless" because Defendant suffered prejudice from receiving the February 2019 opinions six months after the expert disclosure deadline and four months after the close of all discovery, thus having no opportunity to depose Dr. Mintz. *See Ritchie*, 280 F.R.D. at 159 ("Harmless[ness] means an absence of prejudice to the defendant."). Because Plaintiff's permanent disability rating would undoubtedly impact the damages determination, Defendant was entitled to conduct appropriate discovery and adequately prepare its defense on this issue.

However, as noted above, because preclusion is "a drastic remedy" that is "generally disfavored," the district court is not required to preclude the February 2018 opinions despite Plaintiff's noncompliance and may instead consider other sanctions. *See Kunstler*, 242 F.R.D. at 265; *see also* Fed. R. Civ. P. 37(c)(1); *Design Strategy*, 469 F.3d at 298. Indeed, before granting the "extreme sanction of preclusion," a court "should inquire more fully into the actual difficulties which the violation causes and must consider less drastic responses." *Ritchie*, 280 F.R.D. at 157 (quoting *Outley v. New York*, 837 F.2d 587, 591 (2d Cir. 1988)). For example, instead of precluding the disputed evidence, a court may consider reopening discovery in a

manner that "would remedy the prejudice" suffered by the party seeking preclusion "without incurring excessive additional costs." *See e.g.*, *Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 547–48 (S.D.N.Y. 2018) (concluding that preclusion was not appropriate where discovery could be reopened in a way that would "remedy the prejudice suffered by Defendants" by allowing them to depose witnesses regarding the new evidence); *Ritchie*, 280 F.R.D. at 162 (concluding that preclusion was not appropriate where the court could grant a continuance by allowing additional discovery and shifting some of the costs to the noncompliant party).

The courts in the Second Circuit consider the following factors when deciding whether preclusion pursuant to Rule 37(c) is an appropriate sanction for a party's failure to comply with its discovery obligations: "(1) the party's explanation for the failure to comply; (2) the importance of the evidence that would be precluded; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006); *Rivera*, 325 F.R.D. at 547; *Doctor's Assocs., Inc. v. QIP Holder LLC*, No. 3:06–cv–1710, 2010 WL 669870, at *12 (D. Conn. Feb. 19, 2010).

The Court begins by considering the first factor. Admittedly, and as discussed above, Plaintiff's explanation does not "substantially justif[y]" her failure to comply with discovery obligations and demonstrates a lack of diligence on the part of Plaintiff's counsel. Neither the personnel issues on which Plaintiff's counsel blames the tardy submission of the February 2019 opinions, nor Plaintiff's counsel's failure to timely seek an extension of the expert disclosure deadline in light of the A.M.A. guidelines justify Plaintiff's failure to comply with her discovery obligations. The Court, however, is reluctant to punish Ms. Benn for her counsel's mistakes, especially given that Ms. Benn was diligent in following up with Dr. Mintz regarding her

disability assessment exactly a year after her surgery, in compliance with the A.M.A. guidelines, and timely sharing the February 2019 opinions with her counsel. *See Micciche v. Kemper Nat. Servs.*, 560 F. Supp. 2d 204, 211 (E.D.N.Y. 2008) (refusing to "punish plaintiff for her counsel's mistakes" that led to defective service); *see also Larkin v. Town of West Hartford*, 112 F.3d 504 (Table), 1997 WL 216002, at *1–2 (2d Cir. 1997) (vacating the award of attorneys' fees to the defendant, where the "[p]laintiff's counsel inadvertently did not diary defendants' [attorneys' fees] motion for response" thus failing to oppose it); *Ford v. Fogarty Van Lines, Inc.*, 780 F.2d 1582, 1583 (11th Cir. 1986) ("A party should not be punished for his attorney's mistake absent a clear record of delay or willful contempt and a finding that lesser sanctions would not suffice."). The Court also finds it relevant to its determination that, although Plaintiff's counsel could have been more diligent about timely producing the February 2019 opinions, neither Plaintiff nor her counsel acted in bad faith. *See Equant Integrations Servs., Inc. v. United Rentals (North America)*, Inc., 217 F.R.D. 113, 117–118 (D. Conn. 2003) (the court may consider whether the noncompliant party acted in bad faith when deciding whether to preclude the belatedly disclosed expert opinion); *Semi-Tech Litig. LLC v. Bankers Trust Co.*, 219 F.R.D. 324, 325 (S.D.N.Y. 2004) (the court may consider whether [the plaintiff's] "failure to prepare in a timely and diligent manner was a product of bad faith" when deciding whether to preclude evidence). Overall, while Plaintiff's explanation for failing to comply with her discovery obligations is not very satisfying, it is not, by itself, sufficient to warrant preclusion.

The second factor weighs against preclusion because Dr. Mintz's causation and permanent disability opinions are crucial to Plaintiff's damages claim and are potentially meritorious. As Defendant acknowledges, these opinions are relevant and "important to the plaintiff's case." Doc. 35-1, at 6. Despite Defendant's contentions that the February 2019

opinions "for the first time" link Plaintiff's cervical spine limitations to the injury arising out of the May 18, 2017 accident, the medical records created by Dr. Mintz, Dr. Anand, and Dr. Turaban over the course of the last two years repeatedly link Plaintiff's cervical spine condition to the May 18, 2017 accident. *See e.g.*, Pl.'s Exh. 15 (Dr. Anand's June 27, 2017 report diagnosing "cervical radiculopathy" and documenting that Ms. Benn "has been suffering from . . . chronic pain located in the neck and arm . . . after sustaining an injury" which "occurred on 5/18/2017" when Ms. Benn "was involved in train derailment"); Pl.'s Exh. 13, at 1 (Dr. Mintz's December 1, 2017 assessment diagnosing "cervical disk herniation" and documenting that Ms. Benn reported being "in good health" until May 2017 "when riding a train that derailed"); Pl.'s Exh. 17 (Dr. Kelly's August 2, 2018 report documenting that Ms. Benn "was in a train derailment on May 18, 2017" following which Dr. Mintz treated her for "cervical pain"); *see also* Doc. 38, at 1–3 (describing these and other medical reports). The second factor, thus, weighs against preclusion.

The third factor weighs in favor of preclusion because Defendant suffered prejudice from receiving the February 2019 opinions six months after the expert disclosure deadline and not having an opportunity to depose Dr. Mintz regarding these opinions. *Rivera*, 325 F.R.D. at 548 (concluding that the party who did not have an opportunity to depose witnesses regarding the newly disclosed testimony was prejudiced). Further, Defendant "incurred the expense of retaining its own medical expert, who was relying on the records available to him [at the time]" and did not have an opportunity to respond to Dr. Mintz's causation and disability assessments. *See* Doc. 35-1, at 6–7. Additionally, Defendant would suffer prejudice if Dr. Mintz testifies as to his causation and disability opinions at trial because, in their current form, the February 2019 opinions do not comply with Rule 26(a)(2)(C) disclosure requirements and fail to provide

"sufficient detail to permit defendants to prepare their defense."  *See McAfee*, 2017 WL 3184171, at *5.

The fourth factor, continuance, weighs against preclusion.  Plaintiff requests that the expert disclosure period be extended, arguing that "[t]he enlargement of time would resolve the [parties'] scheduling and expert disclosure issues."  Doc. 35, at 4 ¶ 5.  Notably, Defendant admits that "continuance would be possible."  Doc. 35-1, at 7.  The Court finds persuasive the analysis in *Ritchie*, 280 F.R.D. at 162, which concluded that continuance was possible notwithstanding some prejudice to the defendants and the fact that discovery was already closed:

> With no trial date yet set, this Court sees no reason why a continuance would not be feasible.  Further, the Court would have the authority to shift certain discovery costs to Plaintiffs, so as to avoid burdening Defendants with costs they would not have incurred, but for Plaintiffs' non-compliance with the discovery rules.

As in *Ritchie*, continuance in this matter is certainly feasible, as no trial date has been set yet.  Extending the expert disclosure period would allow Plaintiff to cure the Rule 26(a)(2)(C) deficiencies of the February 2019 opinions and thus make use of Dr. Mintz's testimony on causation, permanency and disability.  Although Defendant suffered prejudice from missing an opportunity to examine Dr. Mintz's causation and disability opinions prior to the close of discovery, such prejudice can be "easily remedied" by "affording defendant the time necessary" to engage in additional discovery and depose both Plaintiff and Dr. Mintz.[8]  *See Young v. Southwest Airlines Co.*, No. 14-cv-1940, 2016 WL 3257008, at *3 (E.D.N.Y. May 4, 2016); *Torres v. Dematteo Salvage Co.*, No. 14-cv-774, 2016 WL 7568642, at *4 (E.D.N.Y. Mar. 2, 2016) (reopening discovery despite some prejudice to the plaintiff and noting that "courts in the Second Circuit . . . have stated that any prejudice to the opposing party can be alleviated by allowing them to depose the expert prior to trial") (internal quotation marks omitted); *accord*

---

[8] Plaintiff has offered to make both herself and Dr. Mintz available for depositions "to address matters not previously addressed."  *See* Doc. 38, at 5.

*Equant Integrations Servs.*, 217 F.R.D. at 117–118 (refusing to preclude the belatedly disclosed expert opinions where the prejudiced party would have an opportunity to depose the expert regarding these opinions); *Rivera*, 325 F.R.D. 542 at 548.

Further, as suggested by *Ritchie* and consistent with Rule 37(c)(1)(A), although Defendant will suffer prejudice from incurring additional costs once discovery is reopened, this prejudice can be mitigated by shifting some of these costs to Plaintiff. *See* Fed. R. Civ. P. 37(c)(1)(A) (stating that, "instead of" the sanction of preclusion, the district court "may order payment of the reasonable expenses" caused by the party's failure to timely disclose evidence). Should Defendant request to depose either Ms. Benn or Dr. Mintz regarding Dr. Mintz's causation, permanency and disability opinions, Plaintiff must bear the out-of-pocket costs of such depositions (each party would bear its own attorneys' fees).

Therefore, on balance, the Court finds that precluding Dr. Mintz's causation and disability opinions is not justified in the present case, because continuance is possible and the prejudice to Defendant can be remedied by requiring Plaintiff to bear certain deposition costs of the additional discovery. *See e.g.*, *Moroughan v. County of Suffolk*, 320 F. Supp. 3d 511, 525 (E.D.N.Y. 2018) (allowing additional discovery, "[n]otwithstanding the delinquency of the [defendants]," because "a trial date has not been set and the prejudice to the plaintiff can be offset"); *Rivera*, 325 F.R.D. at 547–48 (allowing additional fact discovery, despite the fact that it had already closed, where "no trial date ha[d] been set" and the defendants could depose the witnesses regarding the new evidence). The circumstances of the present case warrant extending expert discovery for the limited purpose of allowing the parties to conduct additional discovery into Dr. Mintz's causation, permanency and disability opinions, and doing so would be within the Court's discretion. *See Valentin v. Cty. of Suffolk*, 342 F. App'x 661, 662 (2d Cir. 2009)

(summary order) (the district court acted "within its discretion" by declining to preclude the opinions of the defendants' belatedly disclosed expert and, instead, directing the defendants to make the expert available for a deposition at plaintiff's request).

The Court, however, warns Plaintiff and her counsel that it will not tolerate any further noncompliance with the discovery or trial deadlines set in this matter. *See Rivera*, 325 F.R.D. at 548. Additionally, and as discussed above, Plaintiff must be mindful of the Rule 26(a)(2)(C) requirements if she seeks to introduce Dr. Mintz's disability, permanency, impairment or causation opinions at trial.

**B. Plaintiff's Request to Conduct Additional Discovery into the Left Upper Extremity Radiculopathy and Paresthesias Symptoms**

Although the Court has found in favor of extending the expert disclosure deadlines for the limited purpose of conducting additional discovery into Dr. Mintz's causation, permanency and disability opinions, the Court must separately consider Plaintiff's motion to conduct additional discovery into Plaintiff's left upper extremity radiculopathy and paresthesias ("the left upper extremity symptoms")[9]—medical issues that were allegedly caused by the May 18, 2017 accident. *See* Doc. 38, at 3, 5; Doc. 35, at 1. Plaintiff, who contends that she is "still working" on "the left upper extremity issue" with physicians, seeks to conduct additional discovery into the left upper extremity symptoms so that she can "fairly and justly try her entire claims for serious injuries" allegedly caused by Defendant's negligence. *See* Doc. 38, at 5. Plaintiff seeks to reopen both expert and fact discovery on this issue. *Id.* at 5.

---

[9] The Court may construe Plaintiff's request to extend the expert discovery period as a motion to reopen discovery, even though such request is embedded in the Joint Trial Memorandum and Plaintiff's objection to Defendant's motion in limine. *See e.g.*, *McKay v. Triborough Bridge & Tunnel Auth.*, No. 05-cv-8936, 2007 WL 3275918, at *1 (S.D.N.Y. Nov. 5, 2007) (construing the party's request to reopen discovery, embedded in an opposition letter, as a motion to reopen discovery).

A trial court enjoys "wide discretion" in its handling of pre-trial discovery and deciding whether to reopen it. *See Biosafe-One, Inc. v. Hawks*, 379 Fed. Appx. 4, 9 (2d Cir. 2010). "In deciding whether to reopen discovery, courts consider whether good cause exists." *Bakalar v. Vavra*, 851 F. Supp. 2d. 489, 493 (S.D.N.Y. 2011) (citing *Gray v. Town of Darien*, 927 F.2d 69 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 16(b)(4) (stating that a court's scheduling order "may be modified only for good cause"); D. Conn. L. Civ. R. 7(b)(1) ("motions for extensions of time . . . will not be granted except for good cause").

To determine whether good cause to reopen discovery exists, the courts in the Second Circuit generally consider the following six factors: "(1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence." *See e.g.*, *Bakalar*, 851 F. Supp. 2d. at 493 (collecting cases from the Second, First and Tenth Circuits); *Harnage v. Brennan*, 2018 WL 2128379, at *4 (D. Conn. May 9, 2018) (considering factors (1), (2), (3), (5), and (6) separately from the diligence determination).

As applied to the present case, the above factors suggest that "good cause" exists to reopen discovery and that doing so would advance the resolution of this matter and promote the interests of justice. The first factor, imminence of trial, weighs in favor of reopening discovery. Although this matter was set to be trial-ready on December 2, 2019, an actual trial date has not yet been scheduled. *See e.g.*, *Pierce v. New York State Police*, No. 7:05-CV-1477, 2007 WL 9773394, at *5 (S.D.N.Y. May 21, 2007) (distinguishing between the "trial-ready" and "actual

trial" dates and deciding to postpone both these dates because of discovery issues). Thus, this factor weighs in favor of extending discovery.

The second factor weighs against reopening discovery as Defendant "does not consent to any further extensions of discovery deadlines." Doc. 35, at 2.

The third factor, prejudice to Defendant, does not necessarily weigh against Plaintiff's request to reopen discovery. Although Defendant will suffer prejudice if Plaintiff is permitted to conduct additional discovery into her left upper extremity symptoms, any such prejudice can be "easily remedied" by "affording defendant the time necessary" to engage in additional discovery of its own and depose Plaintiff and any medical expert that she might introduce on this issue. *See Young*, 2016 WL 3257008, at *3; *Torres*, 2016 WL 7568642, at *4. The fact that Defendant admits that "continuance would be possible" and requests, in the alternative, to have an opportunity "to re-depose the plaintiff regarding her later treatment and current limitations, and to conduct any necessary depositions of the plaintiff's medical providers" further suggests that any prejudice that Defendant might suffer as a result of reopening discovery can be remedied. *See* Doc. 35-1, at 7.

Additionally, and as discussed above, any prejudice that Defendant will suffer from having to incur additional discovery costs can be mitigated by shifting some of these costs to Plaintiff. *See* Fed. R. Civ. P. 37(c)(1)(A). If the additional discovery is granted, Plaintiff would be required to make herself available for a deposition to address any newly discovered information regarding her left upper extremity symptoms and to bear the costs of such deposition. [10] *See Scantibodies Lab., Inc. v. Church & Dwight Co.*, 2016 WL 11271874, at *38 (S.D.N.Y. Nov. 4, 2016) (concluding that the defendant "should be afforded the opportunity to

---

[10] As noted above, Plaintiff does not object to being re-deposed regarding any matters not previously addressed. *See* Doc. 38, at 5.

depose fact witnesses regarding [the] belatedly produced documents" because the defendant "suffered real prejudice . . . in losing the opportunity to depose witnesses regarding [these] documents, and in wasting time and money in developing a defense to a damages computation that Plaintiff then entirely changed . . . after fact discovery had been completed."). Similarly, if Plaintiff chooses to designate an expert to opine on the reoccurrence of her left upper extremity symptoms, the prejudice to Defendant can be remedied by affording Defendant an opportunity to depose such expert. Thus, the third factor does not weigh against reopening discovery for the limited purpose of examining the reoccurrence of Plaintiff's left upper extremity symptoms, provided that prejudice to Defendant is remedied in the manner discussed above.

The fourth factor, diligence, is given considerable consideration when determining whether good cause exists. *See e.g.*, *Kassner v. 2nd Ave. Delicatessen*, 496 F.3d 229, 244 (2d Cir. 2007) (noting that "'good cause' depends on the diligence of the moving party"). As the record shows, Plaintiff has been diligent in seeking treatment for her left upper extremity symptoms since the May 18, 2017 accident and over the course of the discovery period set by this Court. Although Defendant suggests that Plaintiff's left upper extremity paresthesias and radiculopathy "to date, ha[ve] not been causally linked to the [May 18, 2017] accident," (Doc. 35, at 2 ¶ 5), the record is to the contrary. Plaintiff's medical history demonstrates that Plaintiff has been seeking treatment for the left upper extremity symptoms since at least June 2017, when she was referred to Dr. Rahul Anand, M.D. for pain management following the May 18, 2017 accident. *See* Doc. 38, at 1–3; Pl.'s Exh. 15 (Dr. Anand's June 27, 2017 report diagnosing "cervical radiculopathy" and documenting that Ms. Benn "has been suffering from . . . chronic pain located in the neck and arm . . . after sustaining an injury" which "occurred on 5/18/2017" when Ms. Benn "was involved in train derailment"). Subsequently, Plaintiff was referred to Dr.

Mintz, M.D., a neurosurgeon, to seek further treatment for the left upper extremity symptoms. Dr. Mintz's initial December 1, 2017 assessment documented that Plaintiff reported being "in good health" until May 2017 "when riding a train that derailed," but that after the accident she "has been having intermittent paresthesias over the 1st, 2nd and 3rd and sometimes 4th digit of both hands, left greater than right" and "intense neck pain." *See* Pl.'s Exh. 13, at 1. To address these symptoms, which Dr. Mintz diagnosed as "cervical disk herniation," (*id.* at 2), Dr. Mintz performed surgery on Plaintiff on February 12, 2018. *See* Pl.'s Exh. 12, at 9. Following the surgery, Plaintiff was prescribed physical therapy for cervical pain and left arm paresthesias until December 2018, (Doc. 38, at 3), and was still reporting "persistent numbness in her left hand" in March 2018, "left upper extremity weakness" in June 2018, and "numbness and swelling of the 3rd, 4th, and 5th digits" in August 2018. *See* Pl.'s Exh. 13. Thus, Plaintiff's left upper extremity symptoms have been repeatedly linked to the injuries that Plaintiff alleges arose out of the May 18, 2017 accident and Plaintiff has been diligently seeking treatment for these symptoms.

Because Plaintiff contends that her left upper extremity symptoms have reoccurred after the passing of the discovery deadlines, it appears that Plaintiff could not have conducted the necessary additional discovery into this issue within the set discovery deadlines—regardless of her diligence. This is not a case where Plaintiff was sitting on records or findings available to her before the close of discovery having "ample opportunity" to support her claims regarding those findings. *Cf. Bakalar*, 851 F. Supp. 2d at 493–94 (declining to reopen discovery to examine expert testimony opining on documents that "were available to [the party] before fact discovery closed," because "any need for an expert to interpret those documents should have been obvious at that time"). It would not be just to punish Plaintiff for a reoccurrence of a

medical condition which, Plaintiff alleges, was caused by Defendant's negligence and for which Plaintiff has diligently sought treatment since the May 18, 2017 accident.

The fifth factor—whether the moving party could foresee the need for additional discovery in light of the discovery deadlines set by the court—does not clearly weigh either in favor of or against reopening discovery. It is difficult for the Court to speculate whether Plaintiff could foresee that the left upper extremity symptoms would reoccur after the close of all discovery, and neither Plaintiff nor Defendant address the foreseeability issue in their briefing. Arguably, although Plaintiff might not have actually known that the left upper extremity symptoms would reoccur, she could have foreseen the need for additional discovery in connection with these symptoms, as she has suffered from them since the May 18, 2017 accident. It is equally plausible, however, that Plaintiff was under a reasonable assumption that the discovery period set by this Court would be sufficient to fully address all her claims and only later discovered the need for additional discovery. Regardless, because of the lack of briefing on this issue and the Court's reluctance to speculate and form unguided opinions—based solely on the Court's own interpretation of Ms. Benn's medical records—as to whether Plaintiff could have foreseen that her symptoms would reoccur, this factor does not weigh either in favor of or against reopening discovery.

Finally, the sixth factor weighs in favor of reopening discovery. Plaintiff's claim that she continues to suffer from the left upper extremity symptoms would impact the amount of damages to which Plaintiff is entitled, as these symptoms are at the crux of Plaintiff's personal injury claim and have been previously linked to the May 18, 2017 accident, as evidenced by the record and discussed above (*see supra* pp. 22–23). Because it is "clear that this limited discovery [would] generate evidence relevant, and arguably necessary, to Plaintiff's ability to

prove her claims," this factor weighs in favor of reopening discovery. *See Jacobs*, 2015 WL 7568642, at *5 (upholding the Magistrate's decision to conduct additional limited discovery).

On balance, the above-referenced factors as applied to the present case weigh in favor of reopening discovery "for the limited purpose" of conducting additional discovery into Plaintiff's left upper extremity symptoms following their reoccurrence. *See id.*; *Rivera*, 325 F.R.D. at 547; *Young*, 2016 WL 3257008, at *4. Therefore, discovery in this matter will be reopened in accordance with the schedule and conditions outlined below.

### C. Modification of the Scheduling Order

Accordingly, the discovery in this matter is extended for the following limited purposes: (1) the parties may conduct additional expert discovery into Dr. Mintz's opinions on causation, permanency, impairment and disability; (2) the parties may conduct additional discovery into the reoccurrence of Plaintiff's left upper extremity symptoms. The scheduling order in this matter is modified in the following way:

**(1)** all expert disclosures are due on or before December 31, 2019,

**(2)** all fact and expert discovery will close on March 1, 2020,

**(3)** the matter will be tried to the Court, beginning at 10:00 a.m. on April 20, 2020 and continuing day to day until concluded, in the Courthouse, 141 Church Street, New Haven, Connecticut.

Plaintiff is directed to make both herself and Dr. Mintz available for depositions regarding Dr. Mintz's causation, permanency, disability or impairment opinions. Should Defendant choose to depose Dr. Mintz and/ or Ms. Benn regarding these opinions, Plaintiff is to bear the cost of such depositions.

Plaintiff is directed to make herself available for a deposition regarding the reoccurrence of the left upper extremity symptoms. If Plaintiff chooses to introduce an expert to opine on the reoccurrence of these symptoms, she is directed to make any such expert available for a deposition as well. Should Defendant choose to depose Ms. Benn and/ or any expert retained to opine on the reoccurrence of the left upper extremity symptoms, Plaintiff is directed to bear the cost of such depositions.

Both parties are directed to meet and confer in order to choose the dates for the additional discovery and depositions. If the parties cannot reach agreement as to the additional discovery dates, the Court will set the dates as it sees fit.

Despite Defendant's plea to the contrary, (*see* Doc. 35-1, at 7), Plaintiff is not required to bear Defendant's attorneys' fees incurred during this additional discovery.

Further, although the Court recognizes that Defendant raised various objections to Plaintiff's proposed trial exhibits in the Joint Trial Memorandum, these objections are too vague and conclusory for the Court to make any judgments based on them alone. Defendant is thus advised to file a separate motion in limine, after the close of the additional discovery, detailing why each exhibit must be precluded and citing to the pertinent caselaw.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Preclude, and GRANTS Plaintiff's request to reopen discovery to the limited extent set forth above.

It is **SO ORDERED**.

Dated:       New Haven, Connecticut

               December 2, 2019

                                           */s/ Charles S. Haight, Jr.*

                                           Charles S. Haight, Jr.

                                           Senior United States District Judge